IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward M. Gower, Jr.,     :
     Petitioner   :
           :
    v.       :
           :
Workers' Compensation Appeal  :
Board (Haines & Kibblehouse Inc.),  : No. 572 C.D. 2015
     Respondent  : Submitted: September 18, 2015

BEFORE: HONORABLE BERNARD L. McGINLEY, Judge
    HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY      FILED: November 17, 2015

    Edward M. Gower, Jr. (Claimant) challenges the order of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) decision that granted Claimant's claim petition in part, suspended benefits from May 10, 2012, through July 9, 2012, reinstated total disability benefits from July 10, 2012, through July 24, 2012, modified benefits to partial disability benefits from July 25, 2012, to November 29, 2012, and terminated benefits as of November 30, 2012. The WCJ also denied and dismissed Claimant's penalty and review petitions and granted the termination petition of Haines & Kibblehouse, Inc. (Employer) as of November 30, 2012.

    Claimant worked as a truck driver for Employer for approximately two years. On May 10, 2012, Claimant slipped when he attempted to get in the "loader" and landed flat footed on the ground and felt a jolt through his back. That same day, as he attempted to clean a cement mixer with a chipping hammer to

remove excess concrete from inside the barrel of the cement mixer, he bent over and felt a pinching in his lower back. Also, on May 10, 2012, Claimant attempted to remove the forms used to make concrete blocks. When Claimant bent over to pull the form away from the concrete, he felt "like a pop in my lower back and . . . it was like when you hit your funny bone, how it goes up through your arm. I felt that through my butt down through my legs and toes." Notes of Testimony, October 12, 2012, (N.T.) at 14; Reproduced Record (R.R.) at 22a. Claimant notified Employer of his injuries and, after working on May 11, 2012, did not return to work.

On June 14, 2012, Employer issued a notice of temporary compensation payable. On August 8, 2012, Employer issued a notice stopping temporary compensation because Employer decided not to accept liability. Also, on August 8, 2012, Employer issued a notice of workers' compensation denial which indicated that Employer contested liability. The Bureau of Workers' Compensation Claim Forms Summary indicates that the notice of workers' compensation denial was filed on August 13, 2012.

On August 15, 2012, Claimant petitioned for benefits and alleged that he suffered a "spine injury, herniation at T12-L1; low back injury," on May 10, 2012, when he was "falling, chipping with air chisel, lifting heavy object." Claimant Petition, August 15, 2012, at 1. Also, on August 15, 2012, Claimant petitioned for penalties and asserted that PMA, Employer's insurer, issued a notice

2

of denial on the ninety-first day after the work injury in violation of Section 406.1 of the Workers' Compensation Act (Act),[1] 77 P.S. §717.1.

Also, on August 15, 2012, Claimant petitioned to review compensation benefits and alleged that a notice of temporary compensation payable dated June 12, 2012, contained an incorrect description of the injury and an incorrect average weekly wage. Employer denied the allegations contained in all three petitions.

On February 14, 2013, Employer petitioned to terminate benefits and alleged that Claimant had fully recovered. The four petitions were ultimately consolidated before the WCJ.

At hearing before the WCJ on October 12, 2012, Claimant testified regarding his injury on May 10, 2012. Claimant continued to experience pain in his lower back and "the pain still goes through the back part of my butt and down the back of my legs." N.T. at 18; R.R. at 26a. Sometimes, Claimant had trouble bending and lifting. N.T. at 18; R.R. at 26a. Although at one point his physician, Charles C. Norelli, M.D. (Dr. Norelli), released him to return to work with restrictions of lifting not more than ten pounds, with no overhead work, no bending, and no repetitive movements, Claimant never returned to work. N.T. at 19; R.R. at 27a. When he took the medication Neurontin which was prescribed for treatment of the work injury, he became "aggravated and very uneasy. I just . . .

---

[1] Act of June 2, 1915, P.L. 736, *as amended*. This section was added by the Act of February 8, 1972, P.L. 25.

3

felt like I was losing control of everything." N.T. at 20; R.R. at 28a. He was prescribed Ativan to counteract this side effect of the Neurontin. N.T. at 20; R.R. at 28a. Prior to taking Ativan, Claimant called Benetta Corley (Corley) at Employer and Victoria Eckert (Eckert), the PMA adjuster, because his workers' compensation check was late. Claimant explained what he said in messages to them:

> I believe it was along the lines of I'm telling you the same thing of what I told my doctor, which was that I was that stressed out from everything going on, that I was starting to count my rifle shells and that's why he prescribed me the other medication, so I wouldn't feel that way.

N.T. at 23; R.R. at 31a.

After Claimant took the Ativan, he "started to feel calmer and more back to my old self." N.T. at 24; R.R. at 32a. He telephoned Eckert and Corley to apologize for his earlier calls. N.T. at 24; R.R. at 32a. Employer fired him because of the threats he made. N.T. at 25; R.R. at 33a. Claimant did not believe that he could return to his time of injury job because it was too hard on his back. N.T. at 27; R.R. at 35a. Claimant attended an Independent Medical Examination (IME) conducted by Dr. Kovalsky but left before the examination was complete because Dr. Kovalsky "didn't want to listen to me or pay attention to what I was trying to explain to him or tell him and I just . . . couldn't take it anymore." N.T. at 28; R.R. at 36a. On cross-examination, he admitted that he told Eckert that he was "going to blow and it wouldn't be pretty." N.T. at 40; R.R. at 48a. He also admitted that when he left the examination with Dr. Kovalsky he was already taking Ativan. N.T. at 44-45; R.R. at 52a-53a.

4

Claimant presented the deposition testimony Dr. Norelli, board-certified in physical medicine and rehabilitation and Claimant's treating physician. Dr. Norelli first examined Claimant on July 10, 2012, took a history, and reviewed medical records. Dr. Norelli also ordered a magnetic resonance imaging test for Claimant which revealed a "herniated disc, moderate to large up at T12-L1." Deposition of Charles C. Norelli, M.D., December 7, 2012, (Dr. Norelli Deposition) at 8; R.R. at 60a. Dr. Norelli testified within a reasonable degree of medical certainty that the cause of the disc herniation was trauma from the May 10, 2012, work incidents. Dr. Norelli Deposition at 9, 13; R.R. at 60a-61a. With respect to the effect Neurontin had on Claimant, Dr. Norelli explained that anxiety was not the usual side effect of Neurontin but that it could happen. Dr. Norelli Deposition at 14; R.R. at 62a. At the time of the deposition, Dr. Norelli characterized Claimant as having mild back pain, no leg pain, and had the ability to perform some "pretty heavy duties" in his backyard with a chainsaw. Dr. Norelli Deposition at 16; R.R. at 62a. He did not believe that it would harm Claimant if he attempted to resume his time of injury job. Dr. Norelli Deposition at 17; R.R. at 62a.

Trooper Krystal Dugan (Trooper Dugan) of the Pennsylvania State Police testified on behalf of Employer that she was contacted by Corley regarding messages to her from Claimant. Employer introduced into evidence her investigative report. Trooper Dugan contacted Claimant and informed him that Employer did not want to receive any more phone calls. Employer did not press charges. Notes of Testimony, January 28, 2013, (N.T. 1/28/2013) at 10; R.R. at 97a.

5

Eckert testified that she received a phone call from Claimant: "There was a phone call in July. He was upset over a few items that had happened and said that if things didn't change that he was going to blow, and it wouldn't be pretty." N.T. 1/28/2013 at 17; R.R. at 104a. She discussed this message with Corley who told her of a message she had received from Claimant. Eckert felt threatened by the contact. N.T. 1/28/2013 at 18; R.R. at 105a.

Rodney Grass (Grass), human resources manager for Employer, testified that Corley contacted him, after Claimant called her several times and complained that his workers' compensation check was late. Claimant was upset and cursing. N.T. 1/28/2013 at 29; R.R. at 116a. Grass testified that Employer decided not to press charges against Claimant and fired him for violating company policy by making threats. N.T. 1/28/2013 at 31; R.R. at 118a.

Daniel Condiles, Jr., general manager of Rahns Construction Material Company (Rahns), a related company to Employer, identified a letter he sent to Claimant that indicated that Rahns would have work for Claimant except for the fact that he was terminated. N.T. at 43; R.R. at 130a.

Employer presented the deposition testimony of Neil Kahanovitz, M.D. (Dr. Kahanovitz), a board-certified orthopedic surgeon. On November 30, 2012, Dr. Kahanovitz examined Claimant, took a history, and reviewed medical records. Within a reasonable degree of medical certainty, Dr. Kahanovitz diagnosed Claimant with a lumbar strain from which he fully recovered as of the examination on November 30, 2012. Dr. Kahanovitz opined that Claimant could

6

resume his previous activities and occupation with no restrictions. Deposition of Neil Kahanovitz, M.D., February 14, 2013, (Dr. Kahanovitz Deposition) at 16; R.R. at 155a. According to Dr. Kahanovitz, the T12-L1 disc herniation was clinically irrelevant. He did not agree with Dr. Norelli that the disc herniation was caused by the work incidents on May 10, 2012. Dr. Kahanovitz Deposition at 17; R.R. at 156a. If there had been earlier clinical manifestations of the T12-L1 disc herniation, none were present at the time of the examination. Dr. Kahanovitz Deposition at 20; R.R. at 159a.

The WCJ granted the claim petition in part. The WCJ suspended benefits from May 10, 2012, through July 9, 2012; reinstated total disability benefits from July 10, 2012, through July 24, 2012; modified to partial disability benefits from July 25, 2012, through November 29, 2012; and terminated benefits as of November 30, 2012. The WCJ denied the review and penalty petitions and granted Employer's termination petitions as of November 30, 2012. The WCJ made the following relevant findings of fact:

> 2. Claimant first missed work on May 14, 2012. . . . Consequently, the 90 day period for filing the Notice Stopping Compensation and the Notice of Workers' Compensation Denial (Denial) ends on August 12, 2012.
>
> 3. The Notice Stopping Temporary Compensation indicates Employer decided not to accept liability for the work injury. An envelope attached to the document bears a postmark of August 9, 2012. The Claim Forms Summary also indicates the document was filed on August 9, 2012. . . .
>
> 4. Defendant [Employer] also issued a Denial. The envelope accompanying the Denial also bears a postmark of August 9, 2012. However, the Claim Forms Summary

7

indicates that this document was filed on August 13, 2012. . . . Neither party has offered evidence regarding this date discrepancy. I find this evidence, without more, is insufficient to meet the claimant's burden of proving a violation of the Act.

. . . .

14. Based upon my observation of them, I find the four defense witnesses entirely credible and persuasive. However, while defendant [Employer] had work available that claimant could perform, there is no evidence of what claimant would have earned, but for his misconduct. . . .

15. Based upon my observations of him, I find claimant is sincerely apologetic for his threatening phone calls. However, claimant's belief that his agitation and hostility was caused by a reaction to Neurontin is rejected, in light of claimant's behavior at the IME scheduled for July 31, 2012.

16. In light of the fact that claimant made several rude and threating phone calls to the employer, a rude and threatening phone call to the claims adjuster, and was rude to Dr. Norelli's office staff, I find the employer was justified in its decision to terminate claimant's employment. The fact that the employer decided not to challenge claimant's award of unemployment compensation benefits is not binding in this court. The employer witness persuasively explained that he was unwilling to confront claimant at an unemployment compensation hearing in light of claimant's repeated past behavior. Consequently, I find some portion of claimant's loss of earnings from July 25, 2012 and ongoing is a result of claimant's volatile behavior. . . .

17. I find Dr. Kahanovitz'[s] opinion that claimant sustained a lumbar strain, and that claimant is fully recovered from his work injury as of November 30, 2012, entirely credible and persuasive. In this regard, I note Dr. Kahanovitz['s] superior qualifications as an orthopedic surgeon, who completed a fellowship in spinal surgery and who limits his practice to treatment of disorders of

the spine. Dr. Kahanovitz'[s] opinion of full recovery is supported by his thorough physical examination.

18. Dr. Norelli's opinion that claimant sustained a T12-L1 disc herniation as a result of the series of events on May 10, 2012, and Dr. Norelli's opinion that claimant's behavior toward the employer and the insurance adjuster was a side effect of Neurontin is entirely lacking in credibility. Dr. Norelli did not point to any medical literature or information in the Physician's Desk Reference which would support his statement about the Neurontin. Dr. Norelli's opinion that claimant was initially totally disabled and then partially disabled is credible and supported by his initial physical examination findings. As to his opinion that claimant remains partially disabled, the doctor's opinion is rejected in light of the fact that he acknowledged claimant performed some work with a chainsaw in the back yard and he acknowledged observing grease stains in claimant's hands. Furthermore, the physical exam findings on December 7, 2012 were entirely benign, and not consistent with a finding of an extruded disc. (Citations omitted).

WCJ's Decision, April 8, 2013, Findings of Fact Nos. 2-4 and 14-18 at 1-2, and 6-7; R.R. at 233a-234a and 238a-239a.

Claimant appealed to the Board which affirmed.

Claimant contends 1) that the WCJ erred when she granted the termination petition where Claimant presented competent, credible evidence that he was not fully recovered and Employer failed to present competent, credible evidence to the contrary; 2) that the WCJ erred when she denied the penalty petition when Employer's Notice Stopping Temporary Benefits was filed more than ninety days after it was put on notice of Claimant's injuries; 3) that the WCJ erred when she denied the review petition when both parties acknowledged the

presence of a T12-L1 herniation and the WCJ failed to adequately explain why she found Dr. Kahanovitz more credible than Dr. Norelli; 4) that the WCJ erred when she found that Employer's termination of employment was reasonable when the stated reason for Claimant's termination was the result of a side effect of Neurontin, a prescription drug that Claimant was compelled to take because of his May 10, 2012, workplace injury; and 5) that the WCJ erred when she admitted into evidence Dr. Kahanovitz's report when the IME was conducted after the deadline imposed by the WCJ.[2]

Initially, Claimant contends that the WCJ erred when she granted Employer's termination petition because Employer failed to prove that all disability had ceased.

The employer bears the burden of proof in a termination petition proceeding to establish that the work injury has ceased. In a case where the claimant complains of continued pain, this burden is met if an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. Udvari v. Workmen's Compensation Appeal Board (US Air, Inc.), 705 A.2d 1290, 1293 (Pa. 1997).

---

[2]    This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation), 589 A.2d 291 (Pa. Cmwlth. 1991).

Here, the WCJ found that Claimant suffered a work-related lumbar strain/sprain. Dr. Kahanovitz testified that Claimant was fully recovered from any injury suffered on May 10, 2012. With respect to the disc herniation at T12-L1, Dr. Kahanovitz found that it did not manifest itself clinically when he examined Claimant and that it was not caused by the May 10, 2012, work incidents.

The WCJ, as the ultimate finder of fact in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki), 593 A.2d 921 (Pa. Cmwlth.), petition for allowance of appeal denied, 600 A.2d 541 (Pa. 1991). This Court will not disturb a WCJ's findings when those findings are supported by substantial evidence. Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock), 667 A.2d 262 (Pa. Cmwlth. 1995). Employer met its burden under Udvari.

Claimant next contends that the WCJ erred when she denied his penalty petition because Employer filed its Notice of Workers' Compensation Denial ninety-five days after Claimant's injury.

Section 435(d)(i) of the Act, 77 P.S. §991,[3] provides that a penalty of up to fifty percent of the compensation due may be assessed against an employer if there has been a violation of the Act or its regulations. The assessment of penalties, as well as the amount of penalties imposed, is discretionary, and absent

_____

[3] This section was added by the Act of February 8, 1972, P.L. 25.

11

an abuse of discretion by the WCJ, this Court will not overturn the WCJ's decision on appeal. Westinghouse Electric Corporation v. Workers' Compensation Appeal Board (Weaver), 823 A.2d 209 (Pa. Cmwlth. 2003). "An abuse of discretion is not merely an error of judgment but occurs, *inter alia*, when the law is misapplied in reaching a conclusion." Id. at 213-214. A judge's ruling on a penalty petition is to be reversed only if the judge has abused his discretion and misapplied the law. Westinghouse.

Here, Claimant argues that Employer violated the Act because it did not file its Notice Stopping Temporary Compensation until more than ninety days after Claimant was disabled.

Section 406.1 of the Act, 77 P.S. §717.1, provides in pertinent part:

(2) The notice of temporary compensation payable shall be sent to the claimant and a copy filed with the department and shall notify the claimant that the payment of temporary compensation is not an admission of liability of the employer with respect to the injury which is the subject of the notice of temporary compensation payable. The department shall, upon receipt of a notice of temporary compensation payable, send a notice to the claimant informing the claimant that:
. . . .
(ii) the payment of temporary compensation entitles the claimant to a maximum of ninety (90) days of compensation; and
. . . .
(4) Payments of temporary compensation may continue until such time as the employer decides to controvert the claim.

(5)(i) If the employer ceases making payments pursuant to a notice of temporary compensation payable, a notice

12

in the form prescribed by the department shall be sent to the claimant and a copy filed with the department, but in no event shall this notice be sent or filed later than five (5) days after the last payment.

. . . .

(6)    If the employer does not file a notice under paragraph (5) within the ninety-day period during which temporary compensation is paid or payable, the employer shall be deemed to have admitted liability and the notice of compensation payable shall be converted to a notice of compensation payable.

The ninety day period for temporary compensation commences on the first date of disability. Galizia v. Workers' Compensation Appeal Board (Woodlock Pines, Inc.), 933 A.2d 146 (Pa. Cmwlth. 2007).

The WCJ found that Claimant's first day of disability was May 14, 2012. Ninety days from May 14, 2012, was August 12, 2012. The WCJ further found that the Notice of Stopping Temporary Compensation was filed on August 9, 2012.[4] The Notice of Workers' Compensation Denial came in an envelope that was postmarked August 9, 2012. However, the actual document was not filed until August 13, 2012, one day after the deadline. August 12, 2012, was a Sunday, a date when state offices were not open for business. As a result, the filing on August 13, 2012, was timely and did not violate the Act. This Court is permitted to take judicial notice of the day of the week of a particular date. Mentz v. Unemployment Compensation Board of Review, 370 A.2d 1232 (Pa. Cmwlth. 1977).

---

[4]     A review of the record indicates that this notice was filed on August 9, 2012, though it was not "received" until August 13, 2012.

Claimant next contends that the WCJ erred when he denied Claimant's review petition to add the T12-L1 disc herniation to Claimant's injury when Claimant proved that the injury occurred and the WCJ failed to give a reasoned decision as to why he found Dr. Kahanovitz more credible than Dr. Norelli. It was Claimant's burden to prove that the notice of compensation payable was materially incorrect. Section 413(a) of the Act, 77 P.S. §771. Claimant failed to do so. While Dr. Norelli opined that the cause of the disc herniation was the work-incidents of May 10, 2012, Dr. Kahanovitz disagreed and was found credible.

With respect to whether the WCJ issued a reasoned decision when he found Dr. Kahanovitz more credible than Dr. Norelli, Section 422(a) of the Act, 77 P.S. §834, provides:

> Neither the board nor any of its members nor any workers' compensation judge shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and

14

explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

In Daniels v. Workers' Compensation Appeal Board (Tristate Transport), 828 A.2d 1043, 1053 (Pa. 2003), our Pennsylvania Supreme Court stated that "absent the circumstance where a credibility assessment may be said to have been tied to the inherently subjective circumstance of witness demeanor, *some articulation of the actual objective basis for the credibility determination must be offered* for the decision to be a 'reasoned' one which facilitates effective appellate review." (Footnote omitted and emphasis added). Our Pennsylvania Supreme Court further explained in Daniels that "where the fact-finder has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible, in the absence of some special circumstance, could be sufficient to render the decision adequately reasoned." Daniels, 828 A.2d at 1053.

With respect to whether the WCJ satisfied the reasoned decision requirement in his acceptance of Dr. Kahanovitz's opinion and his rejection of Dr. Norelli's opinion, the WCJ explained that Dr. Kahanovitz had superior qualifications as a board-certified orthopedic surgeon and spine specialist and he conducted a thorough physical examination. This articulation of the basis for the WCJ's credibility determination satisfied the reasoned decision requirement.

Claimant next contends that the WCJ erred when he determined that Employer's termination of Claimant's employment was reasonable because Claimant demonstrated that his conduct was the result of a negative side effect of

15

Neurontin, a prescription drug which was prescribed for him as a result of the work injury.

Once again, Claimant ignores the WCJ's credibility determinations. The WCJ specifically did not credit the testimony of both Claimant and Dr. Norelli. Claimant argues his version of the facts which this Court will not adopt where they were contrary to the facts the WCJ found which were supported by substantial evidence.

Finally, Claimant contends that the WCJ erred as a matter of law when she relied on Dr. Kahanovitz's expert report when the WCJ ordered that the IME be completed within forty-five days of October 12, 2012, and it was not conducted until November 30, 2012, which was forty-nine days after the order. Claimant did not object to the submission of the report or the deposition testimony of Dr. Kahanovitz before the WCJ. Further, Claimant did not raise this issue in his appeal to the Board. An issue is waived unless it is preserved at every stage of a proceeding. Nabisco Brands, Inc. v. Workers' Compensation Appeal Board (Tropello), 763 A.2d 555 (Pa. Cmwlth. 2000).

Accordingly, this Court affirms.

_____
BERNARD L. McGINLEY, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward M. Gower, Jr.,
               Petitioner

       v.

Workers' Compensation Appeal
Board (Haines & Kibblehouse Inc.),
               Respondent

:
:
:
:
:
:
:
:
:    No. 572 C.D. 2015
:
:

## **O R D E R**

AND NOW, this 17th day of November, 2015, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

_____
BERNARD L. McGINLEY, Judge